IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:19-CR-00021-C |
| | ) | |
| TANYA MARIE REGAN (01) | ) | **FILED PARTIALLY UNDER SEAL** |
| CHRISTOPHER JAMES REGAN (02), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**UNITED STATES' MOTIONS *IN LIMINE* AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

I.    Christopher and Tanya Regan Should be Precluded From Offering Evidence or Argument Regarding Their Victims' Sexual History or Voluntary Participation in Sex Acts .................................................................................................................. 1

II.   The United States Should Be Permitted to Introduce Excerpts of John Doe #1's Child Forensic Interview at Trial ......................................................................... 2

    A.  The United Stqates Seeks Admission of the Interview Under Federal Rule of Evidence 807 and Provides Notice of its Intent to Do So .......................... 2

    B.  The Interview Will Also Likely Be Admissible Under Federal Rule of Evidence 801(d)(1)(B)(ii) .................................................................................. 5

    C.  Admission of the Interview Will Pose No Confrontation Clause Issue .......... 6

III.  The Marital Privilege Does Not Bar Admission of Marital Communications Between Christopher and Tanya Regan ........................................................... 6

    A.  ███████████████████████████████████████████████████ 7

    B.  The Marital Privilege Does Not Apply to Conversations About Crimes In Which the Spouses are Joint Participants ....................................................... 9

    C.  The Marital Privilege Cannot Be Claimed Over Communications in Which Christopher Regan Was Pretending to Be Someone Else ............................. 10

    D.  The Marital Privilege Does Not Cover Christopher and Tanya Regan's Jail Letters ....................................................................................................... 10

IV.   Place-of-Manufacture Inscriptions on the Electronic Devices Containing Child Pornography Should Be Admitted to Prove Movement in Interstate Commerce ....... 11

    A.  The Inscriptions are Self-Authenticating Under Federal Rule of Evidence 902(7) ... 12

    B.  Even Assuming that the Inscriptions are Hearsay, They are Admissible Under Rule 807 ................................................................................................ 13

    C.  The Inscriptions are Not Hearsay .................................................................. 14

V.    Conclusion ....................................................................................................... 16

## **TABLE OF AUTHORITIES**

### **Cases**

*Crawford v. Washington*, 541 U.S. 36 (2004) ................................................................ 6

*Kawashima v. Mukasey*, 530 F.3d 1111 (9th Cir. 2008)................................................. 15

*Ortiz-Graulau v. United States*, 756 F.3d 12 (1st Cir. 2014)......................................... 2

*Trammel v. United States*, 445 U.S. 40 (1980) .......................................................... 7, 10

*United States v. Allery*, 526 F.2d 1362 (8th Cir. 1975) ................................................. 9

*United States v. Alvarez*, 972 F.2d 1000 (9th Cir. 1992) .............................................. 15

*United States v. Archer*, 733 F.2d 354 (5th Cir. 1984) ................................................. 7

*United States v. Bahe*, 128 F.3d 1440 (10th Cir. 1997) ................................................ 8

*United States v. Boles*, 914 F.3d 95 (2d Cir. 2019) ................................................. 12, 13

*United States v. Bowling*, 32 F.3d 326 (8th Cir. 1994)................................................. 14

*United States v. Breton*, 740 F.3d 1 (1st Cir. 2014)................................................... 8, 9

*United States v. Brown*, 2009 WL 2090193 (S.D. Ind. July 13, 2009)................... 13, 15

*United States v. Burdulis*, 753 F.3d 255 (1st Cir. 2014) .............................................. 13

*United States v. Cameron*, 556 F.2d 752 (5th Cir. 1977) ............................................. 7

*United States v. Cox*, 871 F.3d 479 (6th Cir. 2017).................................................... 6

*United States v. Dickson*, 632 F.3d 186 (5th Cir. 2011) .......................................... 11, 12

*United States v. Foley*, 740 F.3d 1079 (7th Cir. 2014) ............................................... 11

*United States v. Harrelson*, 754 F.2d 1153 (5th Cir. 1985)......................................... 10

*United States v. J.A.S., Jr.*, 862 F.3d 543 (6th Cir. 2017) ............................................ 6

*United States v. Koch*, 625 F.3d 470 (8th Cir. 2010)................................................... 14

*United States v. Koehler*, 790 F.2d 1256 (5th Cir. 1986) ............................................. 7

*United States v. Leal-Del Carmen*, 697 F.3d 964 (9th Cir. 2012) ................................ 4

*United States v. Martinez*, 44 F. Supp. 2d 835 (W.D. Tex. 1999)................................. 8

*United States v. Miller*, 588 F.3d 897 (5th Cir. 2009) .................................................. 9

*United States v. Pina*, 190 F. Supp. 3d 748 (S.D. Ohio 2016)..................................... 14

*United States v. Ramirez*, 145 F.3d 345 (5th Cir. 1998)............................................... 9

*United States v. Raplinger*, 555 F.3d 687 (8th Cir. 2009) ........................................... 2

*United States v. Saguil*, 600 F. App'x 945 (5th Cir. 2015)............................... 12, 13, 14

*United States v. Scott*, 2014 WL 2808802 (E.D. Va. June 20, 2014) ...................... 12, 14

iii

*United States v. Smith*, 591 F.3d 974 (8th Cir. 2010) ................................................. 4

*United States v. Terrell*, 700 F.3d 755 (5th Cir. 2012) ............................................... 12

*United States v. Thody*, 978 F.2d 625 (10th Cir. 1992) .............................................. 15

*United States v. Thunder Horse*, 370 F.3d 745 (8th Cir. 2004) ................................... 4

*United States v. Tolbert*, 2019 WL 2717114 (D.N.M. June 28, 2019) ........................ 14

*United States v. W.B.*, 452 F.3d 1002 (8th Cir. 2006) ................................................. 4

*United States v. Wells*, 843 F.3d 1251 (10th Cir. 2016) .............................................. 2

*United States v. White Bull*, 646 F.3d 1082 (8th Cir. 2011) .................................... 3, 5

*United States v. White*, 974 F.2d 1135 (9th Cir. 1992) ................................................ 9

**Statutes**

15 U.S.C. § 1125 ......................................................................................................... 13

18 U.S.C. § 2251 ......................................................................................................... 11

18 U.S.C. § 2252A ...................................................................................................... 11

18 U.S.C. § 3509 ........................................................................................................... 1

19 U.S.C. § 1304 ......................................................................................................... 13

**Rules**

Federal Rule of Evidence 102 ..................................................................................... 14

Federal Rule of Evidence 402 ....................................................................................... 2

Federal Rule of Evidence 412 ....................................................................................... 1

Federal Rule of Evidence 501 .................................................................................... 7, 9

Federal Rule of Evidence 801 .................................................................................... 5, 6

Federal Rule of Evidence 803 ....................................................................................... 3

Federal Rule of Evidence 804 ....................................................................................... 3

Federal Rule of Evidence 807 ................................................................................. *passim*

Federal Rule of Evidence 902 ..................................................................................... 12

Local Criminal Rule 55.3 .............................................................................................. 1

Military Rule of Evidence 504 ...................................................................................... 9

Texas Rule of Evidence 504 .......................................................................................... 9

The United States hereby moves *in limine* on the following evidentiary issues it anticipates will arise at trial in this matter.[1]

## I.   Christopher and Tanya Regan Should be Precluded From Offering Evidence or Argument Regarding Their Victims' Sexual History or Voluntary Participation in Sex Acts

Under Federal Rule of Evidence 412, with limited exceptions that do not apply in this case, a party in a criminal proceeding involving sexual misconduct may not introduce "evidence offered to prove that a victim engaged in other sexual behavior" or "evidence offered to prove a victim's sexual predisposition."  The purpose of the rule is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process."  Fed. R. Evid. 412, Advisory Committee Notes.  The protections provided by the rule "encourage[] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders."  *Id.*  Evidence that is precluded under the rule includes evidence of "all activities that involve actual physical conduct" as well as "activities of the mind, such as fantasies and dreams."  *Id.*

This is a criminal case involving sexual misconduct.  Accordingly, Rule 412 prevents Christopher and Tanya Regan from presenting evidence as to their victims' sexual history or predisposition.  In order to protect their victims from potential embarrassment—that is, embarrassment above and beyond their testimony about the facts underlying the Superseding Indictment—the Court should preclude such evidence *in limine*.

---

[1]  In accordance with Local Criminal Rule 55.3(a) and 18 U.S.C. § 3509(d)(2), the United States makes this filing partially under seal.  All information that could be used to identify child victims in this case will be redacted in the public version of this document.  Under 18 U.S.C. § 3509(d)(2), the United States will file an unredacted version of this document with the clerk's office.

1

The Court should likewise preclude *in limine* any evidence or argument from Christopher or Tanya Regan that their victims supposedly "voluntarily" participated in any sex acts, including sex acts on camera, because such evidence is irrelevant.  It goes without saying that "a minor cannot consent to production of child pornography."  *United States v. Wells*, 843 F.3d 1251, 1255 (10th Cir. 2016); *see also Ortiz-Graulau v. United States*, 756 F.3d 12, 21 (1st Cir. 2014) ("[S]tatutory rape laws throughout the country criminalize sexual contact with minors even when the minor willingly participates.  This protective reasoning extends to regulating child pornography.") (internal citations omitted); *United States v. Raplinger*, 555 F.3d 687, 690-93 (8th Cir. 2009) (district court properly instructed jury that consent is not a defense to sexual exploitation of a child under 18 U.S.C. § 2251(a) and (e)).  Because minors cannot consent to child pornography or unlawful sexual activity, evidence regarding consent is irrelevant and inadmissible.  *See* Fed. R. Evid. 402.

## II.   The United States Should Be Permitted to Introduce Excerpts of John Doe #1's Child Forensic Interview at Trial

At trial, the United States intends to call John Doe #1 and elicit testimony as to Christopher and Tanya Regan's criminal conduct.  Depending on John Doe #1's testimony on direct and cross examination, the United States may then seek to introduce portions of his videotaped child forensic interview (the "Interview").

### A.   The United States Seeks Admission of the Interview Under Federal Rule of Evidence 807 and Provides Notice of its Intent to Do So

The United States hereby provides the Defendants with notice of its intent to introduce the Interview under Federal Rule of Evidence 807.[2]  That Rule, also known as the "residual"

---

[2]  Rule 807(b) provides that a notice of intent to introduce evidence should include the name and address of the declarant.  John Doe #1's name and current address are already known to both defendants.  Because John Doe #1 is a minor, the United States does not provide his name and address in this public filing.

hearsay exception, provides that a hearsay statement may be admitted even when it does not fall

into a specified hearsay exception under Rules 803 and 804 as long as:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
>
> (2) it is offered as evidence of a material fact;
>
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
> (4) admitting it will best serve the purposes of the Federal Rules of Evidence and the interests of justice.

Fed. R. Evid. 807(a).  The Interview satisfies all four criteria.

First, statements contained in the Interview will be offered as evidence of material fact.

Fed. R. Evid. 807(a)(2).  In the Interview, John Doe #1 stated, among other things, that Tanya

Regan had sexually abused him and videotaped the abuse, and that Christopher Regan was

sometimes present when the abuse was taking place, and he directed and/or made some of the

recordings.    All of these statements, and similar statements in the Interview, are material to

multiple counts of the Superseding Indictment, including Counts One through Three and

Fourteen.

Second, the United States will seek to introduce the Interview only if it determines that it

is more probative on the points for which it will be offered than the testimony that John Doe #1

provides at trial.  Fed. R. Evid. 807(a)(3).  If John Doe #1's testimony provides sufficient proof

of the Defendants' coordinated efforts to sexually abuse him and produce child pornography, the

United States will not introduce the Interview.  If his testimony does not provide sufficient proof,

however, the United States will seek to introduce the Interview.  *See, e.g., United States v. White

Bull*, 646 F.3d 1082, 1094-95 (8th Cir. 2011) (when child was "unwilling or unable to offer clear

testimony at trial" about dates of sexual abuse, district court did not abuse its discretion in

finding that, under Rule 807, forensic interviewer's testimony as to child's prior statements about dates was more probative than any other evidence available to the government).

Third, the admission of statements in the Interview would serve the purposes of the Federal Rules of Evidence and the interests of justice. Fed. R. Evid. 807(a)(4). As set forth below, the statements have strong indicia of trustworthiness, and they will thus provide a reliable basis for the jury to reach the truth regarding Christopher and Tanya Regan's criminal conduct. In addition, the rare, exceptional circumstances required for the application of Rule 807 will be present in the circumstances under which the United States proposes to introduce the Interview. Specifically, "such exceptional circumstances generally exist when a child victim of sexual abuse is unable or unwilling to testify to a material issue regarding the abuse." *United States v. W.B.*, 452 F.3d 1002, 1006 (8th Cir. 2006).

Finally, the statements of John Doe #1 bear strong circumstantial guarantees of trustworthiness. Fed. R. Evid. 807(a)(1). For one, the Interview was conducted by an experienced child forensic interviewer who employed open-ended, nonsuggestive questions. *See United States v. Thunder Horse*, 370 F.3d 745, 748 (8th Cir. 2004) (affirming introduction under Rule 807 of child forensic interviewer's testimony regarding child victim's statements of sexual abuse in part because, during the interview, the interviewer "asked the victim open-ended questions rather than leading questions"); *see also United States v. Smith*, 591 F.3d 974, 980-81 (8th Cir. 2010) (affirming introduction at trial of recorded child forensic interview under Rule 807). In addition, all the statements in the Interview are captured on videotape, which "unlike written notes taken by an officer, shows the demeanor of the witness, allowing a jury to use visual cues to assess credibility." *United States v. Leal-Del Carmen*, 697 F.3d 964, 974 (9th Cir. 2012). This fact also eliminates any ambiguity about the exact content of the statements. In

addition, John Doe #1 will be available for cross-examination at trial, and if the Interview is admitted, the defendant can question him about his statements.  *See White Bull*, 646 F.3d at 1092 ("Perhaps the strongest circumstantial guarantee of trustworthiness, however, is the fact that [the child victim] testified at trial and was subject to cross examination regarding her statement" that was admitted under Rule 807).  Finally, John Doe #1 had no incentive whatsoever to lie in the Interview.

Accordingly, because the Interview satisfies the requirements of Rule 807, it should be admitted if requested by the United States.

### B.     The Interview Will Also Likely Be Admissible Under Federal Rule of Evidence 801(d)(1)(B)(ii)

In addition, the United States anticipates that Christopher and Tanya Regan will attempt to attack the credibility, consistency, and memory of John Doe #1 during trial in this case.  In such an event, the United States should be able to rebut this defense strategy by introducing, under Federal Rule of Evidence 801(d)(1)(B)(ii), statements in the Interview that are consistent with the John Doe #1's direct testimony.

Rule 801(d)(1)(B)(ii) provides that a person's prior statement can be admitted as non-hearsay when that person testifies consistently with the statement, is subject to cross-examination, and is attacked on a ground other than recent fabrication or recent motive to testify untruthfully.  Before 2014, Rule 801(d)(1)(B) allowed for the admission of a prior consistent statement only when offered to rebut a charge that the witness recently fabricated the in-court testimony.  The 2014 amendment to Rule 801, however, added subsection (ii), which expanded this mechanism to allow admission of prior consistent statements "that rebut other attacks on a witness—such as the charges of inconsistency or faulty memory."  Fed. R. Evid. 801, Advisory Committee Notes.  In at least one case, *United States v. J.A.S., Jr.*, an appellate court held that a

child forensic interview was properly admitted at trial under Rule 801(d)(1)(B)(ii) after the

defense attacked the consistency of the child victim's statements about sexual abuse.  862 F.3d

543, 545 (6th Cir. 2017); *see also United States v. Cox*, 871 F.3d 479, 487 (6th Cir. 2017) (child

victim's prior consistent statement to law enforcement properly admitted under Rule

801(d)(1)(B)(ii) after defense attacked victim's memory).

Accordingly, if at trial the Defendants attempt to attack the testimony of John Doe #1 on

the basis of credibility, consistency, or memory, the United States should be permitted to

introduce the Interview as a prior consistent statement under Rule 801(d)(1)(B)(ii).

### C.      Admission of the Interview Will Pose No Confrontation Clause Issue

Admission of the Interview, under either Rule 807 or 801(d)(1)(B)(ii), will not run afoul

of the Confrontation Clause.  This is because the United States intends to call John Doe #1 as a

witness at trial, and the Defendants will have the opportunity to cross-examine him.  As the

Supreme Court has held, "when the declarant appears for cross-examination at trial, the

Confrontation Clause places no constraints at all on the use of his prior testimonial statements."

*Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).  "The Clause does not bar admission of a

statement so long as the declarant is present at trial to defend or explain it."  *Id.*

### III.    The Marital Privilege Does Not Bar Admission of Marital Communications Between Christopher and Tanya Regan

Christopher and Tanya Regan should not be permitted to hide evidence of their crimes

behind the marital communications privilege.  ███████████████████████████████

███████████████████████████████████████████████████████████   The United

States' evidence in this case includes incriminating communications made between Christopher

and Tanya Regan during the course of their marriage.  The Court should enter an order

prohibiting the Regans from claiming the marital privilege as to such communications.

The marital communications privilege applies to communications "uttered in private between husband and wife." *United States v. Koehler*, 790 F.2d 1256, 1258 (5th Cir. 1986) (quoting *United States v. Archer*, 733 F.2d 354, 359 (5th Cir. 1984)).  (The other marital privilege, which concerns spousal testimony, is not at issue in this motion.)  Federal Rule of Evidence 501 specifies that the common law "as interpreted by United States courts in the light of reason and experience" governs a claim of privilege.  This Rule does not "freeze the law of privilege"; instead, it gives courts the flexibility to develop rules of privilege on a case-by-case basis. *Trammel v. United States*, 445 U.S. 40, 47 (1980); *see also* Fed. R. Evid. 501, Advisory Committee Notes ("privileges shall continue to be developed by the courts of the United States under a uniform standard applicable in both civil and criminal cases").  In addition, because they inhibit the search for the truth, the marital privilege "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of using all rational means for ascertaining truth." *Trammel*, 445 U.S. at 50 (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)).

A.   ██████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████





### B.   The Marital Privilege Does Not Apply to Conversations About Crimes In Which the Spouses are Joint Participants

In addition, the Fifth Circuit has "recognized an exception to the confidential marital communications privilege for those 'conversations between husband and wife about crimes in which they are jointly participating…" *United States v. Miller*, 588 F.3d 897, 904-05 (5th Cir. 2009) (quoting *United States v. Ramirez*, 145 F.3d 345, 355 (5th Cir. 1998)).  It has also adopted a rule that "where both spouses are substantial participants in a patently illegal activity, even the

9

most expansive marital privilege should not bar testimony." *Ramirez*, 145 F.3d at 355.

Christopher and Tanya Regan's discussions of sexually abusing children and exchanging child pornography plainly concern crimes in which they are jointly participating. The marital communications privilege does not extend to such discussions.

### C.  The Marital Privilege Cannot Be Claimed Over Communications in Which Christopher Regan Was Pretending to Be Someone Else

Many of the marital communications that the United States seeks to introduce into evidence are online communications between Tanya and Christopher Regan when Christopher Regan was pretending to be someone else. These communications are not protected by the privilege.

The marital communications privilege "protects 'information privately disclosed between husband and wife in the confidence of the marital relationship.'" *United States v. Harrelson*, 754 F.2d 1153, 1168 (5th Cir. 1985) (quoting *Trammel*, 445 U.S. at 51)). When Christopher Regan communicated with Tanya Regan while pretending to be someone else, Tanya Regan appears not to have known that the communications were made between spouses as opposed to with a third party. The communications between them could thus hardly have been "private" or within the "confidence of the marital relationship," which are prerequisites to the privilege's application.

### D.  The Marital Privilege Does Not Cover Christopher and Tanya Regan's Jail Letters

The Regans have been exchanging letters since their arrest and incarceration, many of which express their devotion to one another and reflect Tanya Regan's efforts to falsely take responsibility for all the criminal activity underlying the Superseding Indictment. The United States may seek to introduce one or more of these jail letters at trial. The marital privilege will pose no bar to doing so because it does not extend to communications made in prison when neither party has any expectation of privacy. *See, e.g., Harrelson*, 754 F.2d at 1169-70.

**IV.     Place-of-Manufacture Inscriptions on the Electronic Devices Containing Child Pornography Should Be Admitted to Prove Movement in Interstate Commerce**

At trial, the United States intends to introduce evidence that certain electronic devices possessed by Christopher and Tanya Regan were manufactured outside of Texas.  Specifically, Counts One through Four and Eleven through Twelve of the Superseding Indictment are predicated on specific electronic devices that were seized from the Regans' home in Big Spring, Texas, and elsewhere.  The underlying devices, which were manufactured either by SanDisk or Toshiba, bear trade inscriptions indicating that they were made outside the United States (the "Inscriptions").

The United States seeks to present the Inscriptions to the jury to satisfy the jurisdictional requirements of Counts One through Four and Eleven through Twelve of the Superseding Indictment, all of which charge production or possession of child pornography (including conspiracy to produce child pornography).[3]  The federal statutes criminalizing production and possession of child pornography each contain a near-identical jurisdictional requirement that can be satisfied by a showing that the child pornography in question was "produced using materials" that moved in interstate or foreign commerce.  *See* 18 U.S.C. § 2251(a); 18 U.S.C. § 2252A(a)(5)(B); *see also United States v. Foley*, 740 F.3d 1079, 1083-84 (7th Cir. 2014) ("the commerce elements of the possession and production statutes are nearly identical").  The word "produced" is not limited to the original recording of the child pornography; instead, it encompasses later copying of child pornography onto electronic storage devices.  *See, e.g., United States v. Dickson*, 632 F.3d 186, 189-90 (5th Cir. 2011) ("Excluding copying from our interpretation of 'producing' would be too restrictive a reading.").

---

[3] The United States reserves its rights to prove the jurisdictional nexuses at trial in other ways as well.

Accordingly, the Fifth Circuit and other courts have found that the jurisdictional element is met upon a showing that the child pornography had later been copied onto an electronic media device that was manufactured outside the state in which it was recovered. *See, e.g., Dickson*, 632 F.3d at 190 ("Because the government presented sufficient evidence that the CD [containing child pornography] was shipped from the Republic of China, a reasonable fact-finder could have found that [the defendant] produced the pornographic images using materials that traveled in interstate or foreign commerce."); *see also United States v. Terrell*, 700 F.3d 755, 761-63, 764-65 (5th Cir. 2012) (jurisdictional elements for counts of production and possession of child pornography satisfied when images were later copied onto a laptop that was manufactured out of state); *United States v. Boles*, 914 F.3d 95, 101, 107-09 (2d Cir. 2019) (same; possession count).

Because the Inscriptions are self-authenticating and do not constitute inadmissible hearsay, the Court should allow them to be admitted at trial.

### A.      The Inscriptions are Self-Authenticating Under Federal Rule of Evidence 902(7)

The Inscriptions are self-authenticating.  Under Federal Rule of Evidence 902(7), evidence that is "self-authenticating" and "require[s] no extrinsic evidence of authenticity to be admitted" includes any "inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control."  This is an exact description of the Inscriptions.  Numerous courts, including the Fifth Circuit, have applied this Rule to place-of-manufacture inscriptions on electronic devices in child-pornography cases.  *See, e.g., United States v. Saguil*, 600 F. App'x 945, 947 (5th Cir. 2015) (unpublished) (manufacturer's inscription "Made in Japan" on camera "is self-authenticating and requires no extrinsic evidence of authenticity to be admitted); *see also United States v. Scott*, 2014 WL 2808802, at *3 (E.D. Va. June 20, 2014) (place-of-manufacture inscription on device containing child pornography "fall[s]

12

squarely within Rule 902(7)" and thus "[t]he authenticity step is easy") (quoting *United States v. Brown*, 2009 WL 2090193, at *11 (S.D. Ind. July 13, 2009) (Hamilton, J.)).

### B.   Even Assuming that the Inscriptions are Hearsay, They are Admissible Under Rule 807

Even if the Inscriptions are hearsay statements—which they are not, as explained below—they are admissible under the residual hearsay exception in Federal Rule of Evidence 807.  The requirements of that Rule are listed above.  *See supra* § II.A.[4]

In the child-pornography-production case of *United States v. Saguil*, the Fifth Circuit held that an inscription on a camera reading "Made in Japan" could be admitted under Rule 807 to show that the camera used to produce child pornography travelled in interstate commerce.  600 F. App'x at 946-47.  Specifically, the court held that the inscription had "guarantees of trustworthiness" that are equivalent to the hearsay exceptions in Rules 803 and 804 because place-of-manufacture inscriptions are "required by law" and "false designations of origin give rise to civil liability."  *Id.* at 947 (citing 19 U.S.C. § 1304(a) and 15 U.S.C. § 1125).  The inscription likewise was offered to prove a material fact—*i.e.*, the jurisdictional element of the offense—and was "more probative on the issue of whether the video camera traveled in interstate or foreign commerce than any other evidence that could have been obtained through reasonable efforts.  *Id.*  Several other courts have likewise found that place-of-manufacture inscriptions may be admitted under Rule 807 for similar reasons.  *See, e.g., Boles*, 914 F.3d at 109-110 (trade inscriptions could be admitted under Rule 807 as well as Rules 803(6) and 803(9)); *United States v. Burdulis*, 753 F.3d 255, 263-64 (1st Cir. 2014) (same); *United States v. Pina*, 190 F. Supp. 3d

---

[4]  The notice requirement of Rule 807(b) is satisfied by this Motion as well as its Appendix, which lists contact information for the manufacturers of the items on which the Inscriptions are located.  The contact information for the manufacturers is also publicly available and easily locatable.

748, 751-52 (S.D. Ohio 2016) (relying on *Saguil* to apply Rule 807 to place-of-manufacture inscriptions); *Scott*, 2014 WL 2808802, at *3-4 (same outcome).

This case is no different than *Saguil*, and the Inscriptions are no less trustworthy than the place-of-manufacture inscription in that case.  And as in *Saguil*, admission of the Inscriptions will eliminate the unjustified expense and delay that would be required in forcing representatives of SanDisk and Toshiba to testify at trial on an issue that is not seriously subject to doubt.  *See* Fed. R. Evid. 102.  The Court should thus find that the Inscriptions are admissible to prove where the corresponding piece of evidence was manufactured.

### C.     The Inscriptions are Not Hearsay

Although the Inscriptions may be admitted even if they are hearsay, several courts have found that place-of-manufacture inscriptions are not hearsay.  For example, in *United States v. Koch*, the Eighth Circuit rejected a defendant's argument that place-of-manufacture inscriptions on a hard drive and computer, which indicated that the items were manufactured in China, was hearsay.  625 F.3d 470, 480 (8th Cir. 2010) (citing *United States v. Bowling*, 32 F.3d 326, 328 (8th Cir. 1994) (manufacturer's name stamped on firearm was not a statement of fact)).

Just one month ago, the District of New Mexico held in *United States v. Tolbert* that place-of-manufacture inscriptions on computer hard drives containing child pornography were admissible as non-hearsay.  2019 WL 2717114, at *4 (D.N.M. June 28, 2019).  Likewise, in *United States v. Scott*, a case involving production and possession of child pornography, the Eastern District of Virginia admitted inscriptions as non-hearsay because "[i]t makes much more sense to think of a 'Made in China' inscription on a production (in all likelihood the result of a mechanical, assembly-line mold) as circumstantial evidence that it was indeed made in that country, not as a statement made by the company that is subject to hearsay rules."  *Scott*, 2014 WL 2808802, at *4.  The Southern District of Indiana held similarly in *United States v. Brown*,

14

noting that "[t]he inscription is simply part of the physical evidence in the case, and it would make little sense to suggest that it should be 'redacted' in some way." *Brown*, 2009 WL 2090193, at *11.  Other courts have held that place-of-manufacture inscriptions on firearms are admissible non-hearsay statements. *See, e.g., United States v. Thody*, 978 F.2d 625, 631 (10th Cir. 1992) ("Made in Spain" inscription on firearm "is not hearsay" because it "is technically not an assertion by a declarant as contemplated by the Rule"); *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1992) (inscription on firearm reading "Gamika, Spain" was admissible and not hearsay because it was "a mechanical trace and not a statement for purposes of Federal Rule of Evidence 801(c)"), *overruled on other grounds by Kawashima v. Mukasey*, 530 F.3d 1111 (9th Cir. 2008).

Accordingly, the Court should find that the Inscriptions do not constitute hearsay and should allow them to be admitted at trial to prove the interstate-commerce elements of Counts One through Four and Eleven through Twelve of the Superseding Indictment.

//

//

//

//

//

//

//

//

//

//

15

## V.   Conclusion

For these reasons, the United States' motions *in limine* should be granted.


Respectfully submitted,


STEVEN J. GROCKI
Chief, Child Exploitation and Obscenity Section
U.S. Department of Justice, Criminal Division

  /s/
KYLE P. REYNOLDS
Trial Attorney
New York State Bar No. 4703856
(Admitted to Practice under L. Cr. R. 57.11)
1400 New York Avenue, NW
Washington, DC 20530
Tel: 202-616-2842
Fax: 202-514-1793
kyle.reynolds@usdoj.gov


RUSSELL H. LORFING
ANN HOWEY
Assistant United States Attorneys
U.S. Attorney's Office, Northern District of Texas
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401

## **APPENDIX**

**For SanDisk Devices:**

Western Digital Corporation
1601 Great Oaks Parkway
San Jose, California 95119

**For Toshiba Devices:**

Toshiba America, Inc.
1251 Avenue of the Americas
Suite 4110
New York, NY 10020

## <u>CERTIFICATE OF CONFERENCE</u>

The foregoing motion is opposed.  I certify that, on July 26, 2019, Assistant United States Attorney Russell Lorfing conferred with Jacob Blizzard, counsel for Christopher Regan, and David Sloan, counsel for Tanya Regan.  During these conferences, counsel discussed the merits of the motion and Mr. Blizzard and Mr. Sloan both expressed their opposition to the motion.  On July 29, 2019, Mr. Blizzard sent an email to Kyle Reynolds, Russell Lorfing, and Ann Howey clarifying that Christopher Regan does not intend to present evidence of other sexual conduct of the alleged victims under Rule 412, or that he will approach the bench before doing so, but that the remainder of the motion is fully opposed.


                                        /s/
                                        KYLE P. REYNOLDS
                                        Trial Attorney
                                        U.S. Department of Justice, Criminal Division


## <u>CERTIFICATE OF SERVICE</u>

On July 29, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Criminal Procedure 49.


                                        /s/
                                        KYLE P. REYNOLDS
                                        Trial Attorney
                                        U.S. Department of Justice, Criminal Division