1                 IN THE UNITED STATES DISTRICT COURT

2                FOR THE NORTHERN DISTRICT OF TEXAS

3                          ABILENE DIVISION

4    UNITED STATES OF AMERICA       )   CASE NO. 1:19-CR-00021-P-BU
                                     )
5                                    )   HELD IN FORT WORTH, TEXAS
     vs.                             )
6                                    )   FEBRUARY 20, 2020
     CHRISTOPHER JAMES REGAN         )   3:25 P.M.
7
                               VOLUME 1
8                       TRANSCRIPT OF SENTENCING
                   BEFORE THE HONORABLE MARK T. PITTMAN
9                  UNITED STATES DISTRICT COURT JUDGE

10   A P P E A R A N C E S:

11   FOR THE GOVERNMENT:       KYLE P. REYNOLDS
                               UNITED STATES DEPARTMENT OF JUSTICE
12                             CRIMINAL DIVISION, CHILD EXPLOITATION
                               1400 New York Avenue NW
13                             Washington, DC  20530
                               Telephone:  202.616.2842
14
                               ANN HOWEY
15                             JEFFREY R. HAAG
                               UNITED STATES DEPARTMENT OF JUSTICE
16                             NORTHERN DISTRICT OF TEXAS
                               1205 Texas Avenue, Rm 700
17                             Lubbock, Texas  79401
                               Telephone:  806.472.7394
18
     FOR THE DEFENDANT:        JACOB AUSTIN BLIZZARD
19                             Blizzard & Zimmerman, PLLC
                               441 Butternut Street
20                             Abilene, Texas  79602
                               Telephone:  325.455.8842
21
     COURT REPORTER:           MONICA WILLENBURG GUZMAN, CSR, RPR
22                             501 W. 10th Street, Room 301
                               Fort Worth, Texas  76102
23                             Telephone:  817.850.6681
                               E-Mail: mguzman.csr@yahoo.com
24
     Proceedings reported by mechanical stenography, transcript
25   produced by computer.

1                               <u>**INDEX**</u>

2                                                   PAGE   VOL.

3

4     Appearances ...............................3       1

5     Defendant Admonished ......................3       1

6     Objections to the PSR by Mr. Blizzard .......6     1

7     Court's Ruling ............................7       1

8     Motion – Downward Departure or Variance

9          By Mr. Blizzard ......................12      1

10         Response by the Government ...........14      1

11    Court's Ruling ............................15      1

12    Sentencing Statements

13         By Mr. Blizzard ......................17      1

14         By Defendant .........................22      1

15         By the Government ....................25      1

16    Sentence of the Court .....................25      1

17    Objection to Sentence .....................31      1

18    Government's Motion to Dismiss ............32      1

19    Court's Ruling ............................32      1

20    Defendant Admonished – Appellate Rights ....32     1

21    Proceedings Adjourned .....................33      1

22    Reporter's Certificate ....................33      1

23

24

25

1              **P R O C E E D I N G S**

2              *(February 20, 2020, 3:25 p.m.)*

3         *THE COURT:*  Court calls Criminal Action Number

4    1:19-CR-21-P-2, United States of America vs. Christopher James

5    Regan for sentencing and further proceedings.

6         At this time I'd ask the attorney to please identify

7    themselves.

8         *MR. BLIZZARD:*  Jacob Blizzard present and ready for

9    Christopher Regan.

10        *MR. REYNOLDS:*  Good afternoon, Your Honor.  Kyle

11   Reynolds, Ann Howey and Jeff Haag on behalf of the Government,

12   present and ready.

13        *THE COURT:*  All right.  Thank you, sir.

14        Mr. Regan, I need you to state your full name for

15   the record acknowledging your presence in the courtroom.

16        *THE DEFENDANT:*  Christopher James Regan.

17        *THE COURT:*  Mr. Regan, you appeared before U.S.

18   Magistrate Judge John L. Parker on October the 11th, 2019.  At

19   that time you entered a plea of guilty to Counts 1, 2 and 3 of

20   the superseding indictment, charging you with conspiracy to

21   produce child pornography and production of child pornography,

22   that's a violation of 18 U.S.C., Section 2251(a) and 2251(e).

23        On that day Judge Parker found your plea of guilty

24   was a knowing and voluntary plea supported by an independent

25   basis in fact containing each of the essential elements of the

1    offense.  You told him at that time you understood the

2    elements of the offense, agreed to the accuracy of the factual

3    resume and admitted that you committed all essential elements

4    of the offense.

5              Accordingly I entered an order accepting your plea

6    and adjudging you guilty of the crimes alleged in the

7    superseding indictment against you.  Your plea of guilty was

8    made pursuant to the plea agreement.  I've had an opportunity

9    to review the plea agreement and the charges to which the

10   defendant has plead guilty and it's my determination that the

11   charge accurately reflects the seriousness of defendant's

12   actual offense behavior so that by accepting the plea

13   agreement I will not undermine the statutory purposes of

14   sentencing, all relevant conduct having been taken into

15   consideration in the calculation of your criminal defense

16   level.

17             Therefore, the plea agreement is accepted and

18   judgment and sentence imposed here today will be consistent

19   with it.

20             Mr. Blizzard, did you and your client receive in a

21   timely manner a copy of the presentence investigation report?

22             *MR. BLIZZARD:*  Yes, sir.

23             *THE COURT:*  And the addendum?

24             *MR. BLIZZARD:*  Yes, sir.

25             *THE COURT:*  Have you had an opportunity to carefully

1    review it with Mr. Regan?

2              MR. BLIZZARD:  Yes, sir.

3              THE COURT:  Did the Government timely receive those

4    documents?

5              MR. REYNOLDS:  We did, Your Honor.

6              THE COURT:  Mr. Blizzard, you've appeared in front

7    of me, you know how I like to do the objections.

8              MR. BLIZZARD:  Yes, sir.

9              THE COURT:  At this time I'll give you my tentative

10   rulings with regards to the numerous objections lodged by

11   Mr. James Regan.  The defendant has objected to paragraphs 95,

12   104 and 113 of the presentence report.  My initial tentative

13   ruling on those is they should be overruled, specifically

14   based on my interpretation of the Sentencing Guidelines of

15   2G1.1, Appendix Number 1.

16             You've also lodged an objection to paragraph 115 and

17   the use of enhancement under the guidelines of

18   misrepresentation of Mr. Regan's identity and his use of the

19   computer and the act of computer services.  Again, my

20   understanding of the guidelines is that that objection should

21   be overruled.

22             Furthermore, an objection has been lodged to

23   paragraph 140 of the presentence report on the grounds that

24   your client has accepted responsibility for his actions, but

25   did not receive a reduction.  My reading of the filing in this

1  case and the facts, as well as the case law, I tend to agree

2  that should be overruled.

3        Finally, you objected to paragraph 191.  The

4  Government has agreed to that, and my tentative ruling is that

5  objection should be sustained.

6        So, at this time, Counsel, you may present any

7  objection or evidence that you'd like for me to consider in

8  regards to the tentative findings that I just stated.

9        MR. BLIZZARD:  Yes, Your Honor.  Thank you.

10       Your Honor, I will stand on my written objections as

11 to all previously asserted, except I would add the comment on

12 the misrepresentation, because I believe the Court has heard

13 some evidence on that as well already this afternoon.  Just

14 for the purposes of this hearing, I would ask the Court to

15 take judicial notice of the hearing/sentencing involving Tanya

16 Regan.

17       THE COURT:  I'm happy to do so.

18       MR. BLIZZARD:  Thank you, Your Honor.

19       And the misrepresentation here, I believe the

20 Government adequately stated in their response to the

21 sentencing persuasive argument for a lesser sentence, the

22 Government's response to that was that Ms. Regan was never

23 under some delusion that Mr. Regan was an actual different

24 person.  He never represented himself to be someone to her and

25 have her believe that she was that person.

1          He engaged -- they engaged frequently, as seen in

2     their writings and the evidence in the case and the chats,

3     they would be communicating about various fantasies, about

4     various role plays of who they were to each other and to their

5     children.  And so, in that context, I don't believe that the

6     argument supports the -- the enhancement is not supported by

7     the evidence, because Mr. Regan did not use such a

8     misrepresentation to induce the children's acts in this case.

9          I know the Court heard some arguments that that was

10    used by Tanya Regan.  She was shown some -- showed victim one

11    some suggestions and documentation, but there's no evidence

12    that suggests that Mr. Regan had knowledge of that.

13         That's all I have as far as my objections, Your

14    Honor.

15         *THE COURT:*  Would the Government like to make any

16    response or would you like to rest on the tentative findings

17    that I've made and any objections that you stated in writing?

18    I'm happy to make my rulings at this time.

19         *MR. REYNOLDS:*  We will rest, Your Honor, on our

20    written objections, Your Honor.

21         *THE COURT:*  Okay.  I'm prepared to make my final

22    rulings on the various objections at this time with the

23    proviso I will take judicial notice of the arguments and

24    evidence that's been presented in the previous hearing of

25    Ms. Regan.

1            At this time I'm going to make my final rulings with

2   regards to the objections lodged by Mr. Christopher James

3   Regan.  With regard to defendant's objections to paragraphs

4   95, 104 and 113 of the presentence report in which the

5   defendant contends he did not distribute child pornography, it

6   was his wife, the Sentencing Guidelines define "distribution"

7   to include any act or possession with intent to distribute,

8   production, transmission, advertisement and transportation

9   related to the transfer of material involved in the sexual

10  exploitation of a minor.  And that's at Section 2G1.1,

11  Appendix Note 1 on the Guidelines.  Sending pornography to

12  one's wife satisfies the plain meaning of distribution;

13  therefore, that objection is overruled.

14           With regards to the defendant's objection to

15  paragraph 115.  The defendant objects to paragraph 115

16  regarding the enhancement under 2G1(b)6 of the Guidelines for

17  misrepresentation of his identity and his use of a computer

18  and an interactive computer service.  Defendant's intention,

19  as I understand it, is that misrepresentation of his identity

20  is only in the context of role playing with his wife, and she

21  understood that the defendant was playing the role and not an

22  online psychologist or doctor.  This enhancement applies, "For

23  the purpose of producing sexually explicit material or for the

24  purpose of transmitting such material live, the offense

25  involved (A) a knowing misrepresentation of participant's

1    identity to persuade, induce, entice, coerce or facilitate the

2    travel of a minor to engage in sexually explicit conduct; or

3    (B) the use of a computer or an interactive computer service

4    to (1) persuade, induce, entice, coerce, facilitate the travel

5    of a minor to engage in sexually explicit conduct, or to

6    otherwise solicit participation by a minor in such conduct; or

7    (2) solicit participation with a minor in sexual explicit

8    conduct."

9            Misrepresentation of the party's identity must be,

10   "Made directly to the minor or to the person who exercises

11   custody, care or supervisory control of the minor."  And

12   that's Section 2G2.1 of the Guidelines.

13           Additionally, if the enhancement is based on the use

14   of a computer, the computer must have been used to communicate

15   directly with a minor or the person that exercises custody,

16   care or supervisory control of the minor.  Here Tanya Regan

17   undisputedly exercised custody, care, supervisory control over

18   victim two, and Christopher Regan misrepresented his identity

19   to her and used a computer and interactive computer service in

20   an attempt to persuade, entice and groom victim two into

21   sexual acts with him.

22           Christopher Regan pretended to be at least two

23   different doctors, a homemaker, various members of Tanya

24   Regan's family and a number of commercial pornography

25   producers.  While pretending to be these individuals, he gave

10

1    Tanya specific instructions in an effort to groom and entice

2    victim two into sexual activity.  All of these communications

3    were made with a computer and an interactive service.

4         The defendant claims this is all role play.  While

5    being interviewed by Homeland Security Investigations in

6    October of 2018, Tanya Regan stated a "psychiatrist" advised

7    her to sexually abuse victim two, and she was given the

8    psychiatrist's contact information by Christopher Regan.

9         Furthermore, there are countless online chats and

10   e-mails between Tanya Regan and profiles controlled by

11   Christopher Regan and no evidence that while the

12   communications were taking place Tanya believed she was

13   communicating with Christopher Regan.  Even if Tanya Regan was

14   aware that Christopher Regan was the person behind the various

15   accounts, the enhancement provided by Section 2G1(b)6 would

16   still apply because Christopher Regan misrepresented his

17   identity to victim two and used a computer and interactive

18   computer service to communicate with him.

19        As set forth in the presentence investigation

20   report, Christopher Regan used the e-mail address

21   stephanykendrickmd@gmail.com to pretend to be a doctor and

22   counsel Tanya Regan to sexually abuse victim two.  During

23   Tanya Regan's exchanges with that address, Christopher Regan

24   sent messages addressed directly to victim 2.  Therefore,

25   defendant's objection to paragraph 115 is hereby overruled.

1              With regards to defendant's objection to paragraph

2      140, the defendant objects to paragraph 140 in the presentence

3      investigation report on the grounds that he accepted

4      responsibility for his actions, including his previous efforts

5      to obstruct justice, but did not receive a reduction of said

6      sentence.  The Sentencing Guidelines make it clear that in the

7      vast majority of cases obstruction of justice is incompatible

8      with acceptance of responsibility.  However -- there may be,

9      however, extraordinary circumstances -- extraordinary cases in

10     which adjustments under Sections 3C1.1 and 3E1.1 may apply.

11     That is according to the Sentencing Guidelines Section 3E1.1.

12             Defendant objects that he did not receive a

13     reduction for acceptance of responsibility, but he provides no

14     justification for this being an extraordinary case that calls

15     for reduction despite his own obstruction of justice.  Courts

16     have refused to award reductions for acceptance of

17     responsibility based on obstructive conduct that was much less

18     serious than Christopher Regan's.  If you want an example of

19     that see *United States vs. Juarez-Duarte*, 513 F.3d 204, 211 of

20     the Fifth Circuit.

21             Less than 24 hours after law enforcement executed

22     a search warrant at his home and seized his cell phone,

23     Mr. Regan logged onto an online platform and remotely wiped

24     that phone in order to avoid -- to avoid law enforcement from

25     obtaining incriminating evidence on it.  Defendant tried to

1    get his mother to destroy evidence for him, and he and his

2    wife engaged in a months-long effort to draft dozens of

3    letters falsely pretending that he was innocent and his wife

4    was responsible for all of the criminal conduct.

5            Defendant obstructed justice or tried to do so

6    repeatedly for months.  He began to accept responsibility only

7    shortly before trial.  Therefore, defendant's objection to

8    paragraph 140 is overruled.

9            Finally, defendant objects to paragraph 191, in that

10   it references that defendant sent images to family members.

11   The Government agrees with defendant's correction to paragraph

12   191, that objection is sustained.  All right.  Those are my

13   final rulings with regard to objections.

14           Defendant also filed a motion for downward departure

15   and downward variance.  And I'd like to tell you I've had an

16   opportunity to reread that and review it, and I am inclined to

17   deny it, but I'm happy to hear otherwise.  So, go ahead.

18           *MR. BLIZZARD:*  Yes, Your Honor.  Thank you.

19           Your Honor, this case is egregious, no doubt, as the

20   Court has correctly pointed out.  We have attached to our

21   motion for downward departure a report of Dr. Dunham.  And

22   Dr. Dunham, although he has some serious reservations about

23   his findings on Mr. Regan, in not doing the Static-99R, which

24   is the assessment used by prison facilities for the release of

25   sex offenders back into population to assess their risks, this

1   risk factor showed that Mr. Regan only had two points and that

2   he was of an average to moderate risk.

3            Now, granted, Dr. Dunham believed that Mr. Regan --

4   you know, this being the egregious case that it is, that

5   instrument may not adequately reflect that.  However, Mr. --

6   or Dr. Dunham noted that Mr. Regan has the propensity for

7   successful completion of section offender treatment.  That he

8   is a good candidate for rehabilitation given other dynamic

9   factors in his life; such as, stable employment, lack of

10   criminal history and no drug or alcohol abuse in the past.

11            And with those matters in mind, successful sex

12   offender treatment means rehabilitating Mr. Regan to a point

13   to where one day he can re-enter society and society can be

14   protected because of that successful completion of sex

15   offender treatment.

16            I have additional argument, Your Honor, as far as

17   the sentence itself.  I don't know whether you want me to go

18   into that now or you would like to rule on this.

19            *THE COURT:*  I'd like to rule on your motion.  You

20   can save that for the allocution stage if you'd like.

21            *MR. BLIZZARD:*  Yes, sir.

22            *THE COURT:*  Would the Government like to make any

23   response in the motion for downward departure?  I'll note that

24   I've given significant time to both the detailed sentencing

25   memorandum that was filed in this case as well as your

1    response to the motion.  So, keep that in mind when you make

2    your decision.

3         *MR. REYNOLDS:*  Thank you, Your Honor.

4         We would just note that given the nature and the

5    intensity and the duration of the abuse in this case, as well

6    as the fact that the offense level is so far above the

7    guidelines chart, a downward departure or a downward variance

8    would be highly inappropriate in this case.

9         *THE COURT:*  All right.  Thank you.

10        All right.  I note for the reasons that have been

11   expressed in the various filings, also based on what I've

12   heard today, the motion for downward departure or variance is

13   going to be denied.

14        Christopher Regan has asked the Court to impose a

15   25-year sentence, which is 65 years lower than the sentence

16   recommended by the Guidelines and represents a downward

17   variance of 72.2%.  Considering good-time credit this

18   recommendation could lead to Christopher Regan serving just

19   over 21 years in prison for this egregious offense.

20        The sentencing table and the Sentencing Guidelines

21   recommended a life sentence for Mr. Regan.  In fact, it would

22   still recommend a life sentence for an offender whose conduct

23   was significantly less egregious than Mr. Regan's.  A sentence

24   of just 25 years fails to adequately satisfy the retributive

25   goal of just punishment given the conduct in this case.

1    Furthermore, Christopher Regan identifies no comparable cases

2    to justify his request for such a massive downward variance

3    from the guideline range.

4         In fact, the only basis for a downward variance that

5    Mr. Regan identifies in his motion is the psychological

6    evaluation with Dr. Jason Dunham.  This estimates -- this

7    evaluation estimates Mr. Regan's "Level of risk for sexual

8    re-offense is within the high range."  The Court does not

9    believe that a psychologist's conclusion that Regan poses a

10   high risk for committing more sex crimes against children is a

11   valid ground for reducing his sentence.

12        The only way for the Court to support a downward

13   variance in this case is through an extraordinary

14   justification.  The Court finds no such justification exists

15   in this case to support any downward variance, let alone three

16   quarters of a reduction in his sentence.  Christopher Regan's

17   conduct was unspeakable, his victims were numerous, his case

18   involves virtually no mitigating factors and his own

19   psychological evaluation confirms that he poses a high risk

20   for sexual re-offending.  Therefore, the Court hereby denies

21   Christopher Regan's motion for downward departure or variance.

22        With the Court's ruling on the motion for downward

23   departure and variance, as well as those that I've just stated

24   previously with regard to the defendant's objections, I will

25   adopt the final findings of fact and statements of fact made

1    in the presence report, subject to and including a change

2    in qualifications made by the addendum to the presence

3    report that I made in response to the objections to the

4    presence report.

5              After having considered the conclusions expressed by

6    the probation officer in the presence report as to the

7    appropriate guideline calculations and having considered the

8    objections and made my rulings thereto, I determine the

9    appropriate guideline calculations in this case are as

10   follows:  Total offense level 43, criminal history category I,

11   imprisonment range for Count 1 of 360 months; imprisonment

12   range of 360 months for Count 2; Count 3, imprisonment range

13   of 360 months, for a total sentencing range of 1,080 months

14   total.

15             Supervised release range as to Count 1, five years

16   to life, Count 2, five years to life; Count 3, five years to

17   life, each term to run concurrently with the others.  Possible

18   fine range of $50,000 to $250,000 plus cost of imprisonment

19   and supervision.

20             At this time I'd ask the United States Probation,

21   did I say everything correctly, as far as you're concerned?

22             *PROBATION OFFICER:*  That's correct.

23             *THE COURT:*  All right.  Thank you.

24             Mr. Regan, I want to let you know that I received

25   from the Government two letters from the victims in this case.

1    And I want you to know that they will go into consideration

2    when I determine the appropriate sentencing.  I have reviewed

3    those.

4              Mr. Blizzard, do you wish to make any remarks on

5    behalf of your client?

6              *MR. BLIZZARD:*  Yes, sir.

7              *THE COURT:*  Go ahead.

8              *MR. BLIZZARD:*  Your Honor, I think that our

9    principal argument I would make here to the Court is that this

10   Court should vary from the guideline sentence of 90 years, and

11   the basis for that is to impose an equitable sentence.  As the

12   Court knows, this Court assessed the sentence of, technically,

13   50 years on Tanya Regan, and Ms. Regan is the primary culprit

14   in this encounter.

15             *THE COURT:*  So, the thought is that I reduce

16   sentencing because he is blaming it on his wife; is that what

17   you're telling me?

18             *MR. BLIZZARD:*  I'm sorry, Judge, I couldn't hear

19   you.

20             *THE COURT:*  So, you're trying to tell me that

21   Mr. Regan deserves a significant variance from his wife of 50

22   years; is that what you're arguing?

23             *MR. BLIZZARD:*  It is somewhat, yes, sir.

24             *THE COURT:*  All right.  Go ahead.

25             *MR. BLIZZARD:*  And the idea here, Your Honor, if I

1    may, is to change the narrative here of what's been presented.

2    The narrative that's been presented here is that this is all

3    at the behest of Mr. Regan and this is all his doing, but I

4    don't believe that the evidence bears out on that.  And I

5    believe that the Government's argument in opposition to

6    reduction for Tanya Regan supports the fact that she is

7    equally culpable.

8         And the analogy that I would draw the Court to even

9    hear is in a bank robbery case.  You may have someone who

10   plans the bank robbery and says, Hey, go in there and take

11   this machine gun and I want to you kill everybody in the bank.

12   And then you have somebody who goes into the bank, not the

13   planner, and that person goes in and kills everyone in the

14   bank.  And so, the question, I think, for the Court to

15   consider in this matter is who was the more culpable person of

16   those two?  Surely they bear significant responsibility, but

17   it is a far more dangerous and serious offender, in my

18   opinion, that would be the person that went in and pulled the

19   trigger.

20        And here, in this case, Mr. Regan --

21        *THE COURT:*  I don't know how you can argue who was

22   more culpable, the planner or the one who pulled the trigger.

23        *MR. BLIZZARD:*  I understand, Your Honor.  I

24   certainly see that position.  The analogy that I'm trying to

25   draw to in this case is that of the vast number of images and

1    videos that depict the abuse in this case only one features

2    Mr. Regan.   There is many hours of videos that feature

3    Ms. Regan abusing victims in this case.   And it's because, for

4    the most part, Mr. Regan did not participate in the abuse

5    itself, he watched and/or recorded it.   Certainly still a

6    crime, and certainly still a very serious problem.

7              But the kind of position I'm putting here to the

8    Court is, again, as to rehabilitation, I believe Mr. Regan is

9    a person that is not beyond that scope, he is not beyond

10   rehabilitation.   And, you know, the Court will note as well,

11   as was mentioned in Tanya Regan's sentencing, Mr. Regan

12   suffered abuse as a child as well.   And so, what happened

13   here, you put two abuse victims who got together and decided

14   it was normal and that's what they wanted to do.

15             Certainly, it's not good.   Certainly, it's very

16   egregious, but the position that I have, Your Honor, is that

17   it would be inequitable in this scenario to sentence Tanya

18   Regan out of a sense of plea bargains because both defendants

19   effectively would have received life sentences had they gone

20   to trial and were convicted, charged with very similar levels

21   of offenses.

22             But Ms. Regan, through, you know, being the first to

23   the table, being the first to talk to the U.S. Attorney's

24   office gets to plead to two offenses and Mr. Regan gets to

25   plead to three.   And granted, there's some other culpability

1 there in terms of obstruction of justice, but, again, both

2 people participated in the obstruction of justice.

3          And so, it's our position, Your Honor, that the

4 equitable sentence in this case would be to sentence Mr. Regan

5 to a level similar to that of Ms. Regan, if the Court is not

6 inclined to grant the motion for downward departure.

7          You know, I would, again, draw the Court back to the

8 statement Ms. Howey made in response to Ms. Regan's argument

9 in sentencing, in that there is no evidence that Ms. Regan was

10 coerced, forced or threatened in any way and that she was

11 never coerced or manipulated in any way, and that's because

12 that's not the case.  Mr. Regan is not a mastermind who

13 subjected his wife to this isolated society, as was portrayed

14 in her sentencing.  It's two people who had similar interest

15 to do similar things.

16          And so, the -- I think that there's a saying about

17 that, deep calls to the deep, you know.  And the deep desires

18 of the person call out to and it's not hard to find the deep

19 desires of another person of similar interests.

20          And, you know, another thing Ms. Howey mentioned in

21 her sentencing comments towards Ms. Regan was that, you know,

22 Ms. Regan engaged in beating, tormenting and tying up the

23 victims.  And Mr. Regan has also admitted to that, but, again,

24 on a more limited basis than the extent that Ms. Regan has.

25          *THE COURT:*  There's crimes that have been sentenced

1  out of this district, including the judge upstairs on the

2  fourth floor where he sentenced an individual to 50 years in

3  prison for just having one enticement and one incident, and

4  that was upheld by the Fifth Circuit.

5          *MR. BLIZZARD:*  I understand, Your Honor.  I

6  understand it's within your discretion.

7          *THE COURT:*  That was determined to be appropriately

8  reasonable.

9          *MR. BLIZZARD:*  Yes, sir.  And I certainly agree that

10 you are within your discretion to impose whatever sentence you

11 believe is reasonable.  So, we're not arguing that the

12 sentence would be unreasonable, simply trying to draw the

13 Court's attention to the facts of this specific case.

14         *THE COURT:*  I understand.  And I did spend the time

15 in this case, including all the filings.

16         *MR. BLIZZARD:*  Yes, sir, I understand.

17         Judge, the last thing I would leave you with, in

18 terms of argument, is in reflecting on victim one's statement

19 that was given to the Court, the thing that stands out to me

20 is that this is a statement vastly about Tanya.  This is a

21 statement that references the terrible things done by both

22 defendants, but mostly about her.  And she is named first and

23 she is named with specific examples of the terrible things

24 that she represented to him and said to him and did to him.

25 And so, again, that just goes to our argument that we just

1   don't want the Court to have the impression that Ms. Regan --

2   that Mr. Regan is this mastermind person who controlled her,

3   manipulated her, forced her to do these things, and we ask the

4   Court for an equitable sentence in this case.

5          THE COURT:  Thank you, counsel.  I'll keep that in

6   mind when I make the proper sentence in this case.

7          Mr. Regan, now is your opportunity.  Do you wish to

8   speak on your own behalf?  Is there any information for me

9   that I can consider, in addition to what your attorney has

10  just told me --

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  -- in mitigation of your sentence?  Talk

13  to me.  You have to talk into the microphone.

14         THE DEFENDANT:  I'm sorry, sir.

15         I prepared a statement, because I have some memory

16  issues.  So, I have it so I can read it.

17         THE COURT:  Let's make it easier for you.  Move over

18  to the podium and use this microphone.

19         THE DEFENDANT:  Yes, sir, I'm sorry.

20         THE COURT:  Go ahead.

21         THE DEFENDANT:  I'd like to thank the Court for

22  giving me the opportunity to speak on my behalf today.

23         We are here today because of me and my actions.  I

24  take full responsibility for the crimes for which I have plead

25  guilty to.

1    The one thing that I wanted to be in this world was

2    a great dad.  I screwed that up and forever changed the lives

3    of my three kids, my family, my wife, her family and all the

4    people that have been involved in this case.  Growing up as a

5    kid all I ever wanted to be was a great dad.

6    For the first few years I accomplished that.  I

7    coached little league baseball, football and was even a

8    basketball commissioner.  I lived and breathed being a good

9    dad.  Ultimately, I blew it.  After a few years I allowed evil

10   to enter be my life and my family's life.

11   We teach our kids about stranger danger, to stay

12   with us in public places, because there are bad people out

13   there in this world.  For my kids the evil and the bad people

14   came from within our own family.  This place that infected my

15   family was directed by myself and Tanya.

16   While on the outside our family looked and acted

17   normal as any other family, but within things happened that

18   should have never taken place.  As a family we had great

19   times.  Sadly, all those are pushed to the back of the mind

20   because of the horrific nature of this evil.  With each of my

21   kids I can recount great memories that I dearly cherish.

22   My oldest son has always been more than a son to me.

23   We traveled the country together playing sports, working on

24   cars, hunting, fishing and just spending time together -- I'm

25   sorry, I lost my place.  My middle child, which has always

1    been the wild and crazy one, he, even at his age, was always

2    the first one to volunteer to help someone out.  The great

3    times we had playing video games, hunting, fishing or just

4    hanging out together.  And my baby girl, never in a million

5    years did I anticipate parties, watch cartoons for hours or

6    just hang out together.

7            Your Honor, these are things that I will cherish for

8    the rest of my life.  I loved all three of my kids, but

9    realize that I made a horrific mistake.  What I want more than

10   anything is treatment and help so one day, hopefully, I will

11   be able to make amends with my kids and with my family.

12   Hopefully my kids will allow me to earn that opportunity in

13   the future.

14           What is not shown on any piece of paper in this

15   court is the love for my kids and our family.  The real me is

16   not shown in any form in this case.  I am asking the Court for

17   a second chance one day to be the man that my mom raised, to

18   be the dad that I've always wanted to be and have a second

19   chance without bars and handcuffs and to be a functioning

20   member of society.

21           Thank you.

22           *THE COURT:*  Thank you, sir.

23           *THE DEFENDANT:*  Yes, sir.

24           *THE COURT:*  I hope that you're sincere when you're

25   saying that.

1          *THE DEFENDANT:*  Yes, sir.

2          *THE COURT:*  Does the Government wish to be heard?

3          *MR. REYNOLDS:*  Briefly, Your Honor.

4          *THE COURT:*  I will note that not only have I

5   considered the victim impact statements, but I also, as I said

6   with Ms. Regan, I have spent hours on this case and I've spent

7   a lot of time with the sentencing memorandum that the

8   Government has submitted.  So keep that in mind when you make

9   your statement.  Go ahead.

10          *MR. REYNOLDS:*  Your Honor, I'd just like to note

11  that everything that Christopher Regan and his wife did to his

12  children was his idea.  It was done at his insistence, at his

13  direction and was done for his sexual amusement.  He is the

14  far more culpable party of these two.

15          Your Honor, this defendant is a danger to community.

16  These victims have suffered tremendously.  The maximum

17  sentence is absolutely appropriate in this case.

18          *THE COURT:*  Thank you, counsel.

19          I will now state the sentence determined after my

20  consideration of all the factors set forth in Title 18 United

21  States Code Section 3553(a), including especially the Advisory

22  Sentencing Guideline by the U.S. Sentencing Commission and the

23  conduct committed by the defendant in his factual resume.  The

24  attorneys will have a final chance to make any legal

25  objections they have before the sentence is finally imposed.

1          It is the judgment of the Court that the defendant,

2     Christopher James Regan, in Cause Number 1:19-CR-21-P, is

3     hereby committed to the custody of the Federal Bureau of

4     Prisons for a period of 360 months as to Count 1, 360 months

5     as to Count 2, 360 months as to Count 3, with each sentence to

6     run consecutive to the others, for a total sentence of 1,080

7     months.   This sentence shall run consecutively to any future

8     sentence that may be imposed in Case Number B-17-0679-SB in

9     119th District Court in Tom Green County, Texas, which is

10    unrelated to the incident in the case.

11          The Court is not ordering a fine or cost of

12    incarceration, because the defendant does not have the

13    financial resources or future earning capacity to pay for the

14    fine or cost of incarceration.   Although restitution is

15    mandatory it is not ordered, because there is no restitution

16    sought by the identified victims of these offenses.

17          It is further ordered that defendant shall pay an

18    assessment pursuant to the Justice of Victims Trafficking

19    assessment at 18 United States Code, Section 3014 of the

20    United States in the amount of $5,000 for each count of

21    conviction, that's $15,000 total, payable to the United States

22    District Clerk, P.O. Box 1218 in Abilene, Texas, 79604.   If

23    upon commencement of the term of supervised release any party

24    assessment imposed pursuant to 18 U.S.C. Section 3014 remains

25    unpaid, the defendant shall make payments on such unpaid

1    balance beginning 60 days after release from custody at the

2    rate of at least $150 a month until the fine is paid in full.

3          The Court further recommends to the United States

4    Bureau of Prisons that the defendant participate in Inmate

5    Financial Responsibility Program while in custody.

6          Pursuant to 18 United States Code Section 2253(a)and

7    Federal Rule of Criminal Procedure 32.2(b)4(B), it is hereby

8    ordered that defendant's interest in the following property is

9    hereby condemned to the United States of America:  Moto

10   cellular phone, serial number ZY2257JXTN; LG cellular

11   telephone, serial number 810CYQX0417260; a silver Toshiba

12   laptop, serial number 5E078456S; a Dell laptop, serial number

13   6C4BBL2; a Dell laptop, serial number CJSPPQ2; a HP laptop,

14   serial number 5CD5386N6B; a Samsung tablet, serial number --

15   IMEI number 352087093301183; a Transcend micro SD card, 32

16   gigabytes; a Samsung Note 9 cellular telephone, IMEI number

17   356569090673413; a Samsung Note 8 cellular telephone, IMEI

18   number 351823090767229; a Samsung cellular telephone, IMEI

19   number 353425083599789; a purple HP laptop, serial number

20   unknown; a blue HP laptop, serial number 5CD546218; four

21   miscellaneous flash drives including SanDisk, Ryder and Lexar

22   brands; nine miscellaneous SanDisk memory cards; five Brady

23   thumb drives; a pink Chrome tablet, 4 gigabyte, serial number

24   RK2928sdk; an Apple iPad, serial number F9FNX04MFPFL; an Apple

25   iPad, serial number F0FP60W4FPFL; a Samsung tablet, serial

1    number R52GCOJY6RW; a Samsung tablet, serial number unknown; a

2    silver Samsung Galaxy S4, serial number unknown; a Samsung

3    Galaxy Prevail, serial number unknown; a Alcatel cellular

4    telephone, serial number unknown; a Motorola cellular

5    telephone, serial number unknown and miscellaneous DVDs and

6    CDs containing child pornography.

7            It is further ordered that upon release from

8    imprisonment the defendant shall be placed on supervised

9    release for a term of life for Count 1, life for Count 2 and

10   life for Count 3, with each term imposed to run concurrent

11   with the others.

12           Furthermore, while on supervised release the

13   defendant shall comply with the standard conditions

14   recommended by the U.S. Sentencing Commission at Section

15   5E1.3(c) of the Guidelines, shall comply with other conditions

16   as set forth in the said order that was provided to the

17   defendant today prior to going on the record.  That order

18   setting additional terms of supervised release has now been

19   returned to the Court.  I'll note for the record it's been

20   signed by Mr. Regan.  And with Mr. Regan's signature on the

21   additional terms of supervised release he's acknowledged his

22   receipt of those additional conditions, his understanding of

23   them and his waiver of having them read in open court and he

24   agrees to be bound by them subject to revocation of any

25   violation of them.

1        It is further ordered that defendant shall pay a

2    special assessment in the amount of $100 per count, for a

3    total of $300.   $100 for each count for a total of $300.

4        In determining the sentence the Court considered the

5    Advisory Guidelines as well as the other statutory directives

6    listed in 18 U.S.C. 3553(a).  A sentence of 1,080 months is

7    sufficient but not greater than necessary to comply with the

8    purposes set forth in paragraph two of Section 3553(a),

9    reflects the seriousness of and provides a just punishment for

10   the offense, promotes respect for the law, affords an adequate

11   deterrence to criminal conduct and protects the public from

12   further crimes of this defendant.

13       In reaching the sentence today, as I said earlier, I

14   spent several hours considering Sentencing Guidelines and the

15   case law, and the requirements Congress imposed upon me that I

16   considered as a sentence in accordance with 18 U.S.C. 3553(a).

17   Crimes for which Mr. Regan has pled guilty to which he is

18   being sentenced to are ghastly, disgusting and deplorable.

19   It's pained me to the depths of my being to be the judge of

20   this case.  The horrible criminal acts endured in the lengthy

21   systematic included sexual, verbal, physical and mental abuse

22   endured by the minor victims in this case, three of the

23   defendant's own children and his brother, are so unspeakable I

24   will not give them the dignity to describe in open court.

25       In considering the nature and the circumstances of

1  the offense and the history and characteristics of this

2  defendant, it is my determination that a sentence of 90 years

3  is sufficient but not greater than necessary when one

4  considers the abominable nature of the defendant's crimes.

5          Indeed, as I said earlier, in over 20 years as a

6  attorney, and six years as a judge, this is possibly the worst

7  case of sexual abuse and exploitation of minors that I've ever

8  seen.  And if I stay on this bench long enough to look like

9  these guys with the white hair, I hope I never see another.

10          A 90-year sentence certainly reflects the

11  seriousness of the offense and provides a just punishment of

12  the offense, and hopefully promotes respect for the law,

13  although I am fearful Mr. Regan may never learn respect for

14  the law.  A sentence of 90 years provides an adequate

15  deterrence to criminal conduct and protect the public from

16  further crimes of this defendant.  Indeed, after reviewing the

17  record in this case, I had no doubt in my mind that if you are

18  ever released from incarceration you will likely always be a

19  threat to the public.

20          And finally, let's hope that the sentence will

21  provide the defendant with the direction and treatment in the

22  most efficient manner, and I hope you get some help.  You have

23  some time to consider what you did, Mr. Regan, and the effect

24  of your actions on yourself, your children, your brother, your

25  wife and others at large, I hope you use it wisely.

1          If I am later determined to be wrong in my

2     calculations for Mr. Regan under the Sentencing Guidelines and

3     the sentence imposed here today of 90 years would still be

4     wholly appropriate after my consideration of the factors set

5     forth in Section 3553, and I would still impose the same

6     sentence.

7          Indeed, I will argue that this case is the paradigm

8     case requiring the imposition of the statutory maximum

9     sentence allowed by Congress for the crimes Mr. Regan has

10     plead guilty to.  Somebody might argue that sentencing you to

11     90 years you're getting a break, and I should have protected

12     the plea agreement.  And like I said to your wife, that may

13     not be wrong.

14          I have now stated the sentence.  Is there any reason

15     why it should not be imposed as stated?

16          *MR. BLIZZARD:*  Judge, for the purpose of appeal, the

17     defendant objects to the sentence as procedurally and

18     substantively unreasonable and in violation of the Eighth

19     Amendment of the United States.

20          *THE COURT:*  That objection is noted and is

21     overruled.

22          Anything from the Government?

23          *MR. REYNOLDS:*  No, Your Honor.

24          *THE COURT:*  Sentence will be imposed as stated.

25          *MR. BLIZZARD:*  Judge, one other thing I forgot to

1   mention earlier, my client would like the Court's

2   recommendation for placement at Seagoville.

3          THE COURT:  That request is denied.

4          Does the Government have a motion?

5          MR. REYNOLDS:  Yes, Your Honor.  At this time we'd

6   ask the Court to dismiss the original indictment in this case,

7   as well as Counts 4 through 11, 13 and 14.

8          THE COURT:  Government's motion is granted.

9          I need to inform you of your appellate rights,

10  Mr. Regan.  You do have a right to appeal the sentence that I

11  just imposed.  If you decide to appeal you have the right to

12  apply for leave in forma pauperis if you're unable to pay for

13  the cost of an appeal.

14         Another document that you signed that was handed to

15  me this morning, that you received prior to going on the

16  record, it's called Notice of Right to Appeal Sentence, which

17  you've signed, as I've noted, it's been returned to me.  You

18  understand this is the Court's notice to you that you have the

19  right to appeal, it is not your notice of your appeal.  If you

20  do decide to appeal you must do so within 14 days, it must be

21  in writing and filed with the Court.  Your attorney can assist

22  you with that if you ask him to.

23         Do you have any questions?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  All right.  At this time you're remanded

1    to the custody of the marshals.

2                    *(Proceedings Adjourned)*

3

4

5                    <u>REPORTER'S CERTIFICATE</u>

6         I, Monica Willenburg Guzman, CSR, RPR, certify

7    that the foregoing is a true and correct transcript from

8    the record of proceedings in the foregoing entitled matter.

9         I further certify that the transcript fees format

10   comply with those prescribed by the Court and the Judicial

11   Conference of the United States.

12        Signed this 8th day of April, 2020.

13

14                         <u>/s/Monica Guzman</u>
                         Monica Willenburg Guzman, CSR, RPR
15                       Texas CSR No. 3386
                         Official Court Reporter
16                       The Northern District of Texas
                         Fort Worth Division
17

18   CSR Expires:        7/31/2021

19   Business Address:   501 W. 10th Street, Room 310
                         Fort Worth, Texas  76102
20
     Telephone:          817.850.6681
21
     E-Mail Address:     mguzman.csr@yahoo.com
22

23

24

25